**ASPE ARQUITECTOS, S.A. de C.V., et al., Plaintiffs,**

v.

**Richard Alan JAMIESON, etc., et al., Defendants.**

**No. 94 C 6872.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 23, 1994.

**594**

Mark Ian Fishbein, Winston & Strawn, John Draper Daniels, Manuel Sanchez, Sanchez & Daniels, Chicago, IL, for Aspe Arquitectos, S.A. de C.V., Funerales San Juan, S.A., a Hotel Paraiso Uruapan, Domingo Hernandez, Ramiro Hernandez.

1. This Court always undertakes an immediate review of newly-filed complaints; see *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986):

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Five plaintiffs—three Mexican corporations and two Mexican individuals d/b/a what appears to be a partnership (or its Mexican equivalent)—have filed this action against an Illinois citizen and a corporation whose principal place of business is in Chicago. Plaintiffs invoke federal jurisdiction on diversity-of-citizenship grounds. Based on this Court's initial review of the Complaint,[1] it sua sponte dismisses the Complaint for lack of subject matter jurisdiction—but with leave to cure promptly any of the jurisdictional flaws identified here as permitted by 28 U.S.C. § 1653.[2]

■ As to all of the Mexican corporations Complaint Count I ¶¶ 1–3 have been careful to identify both facets of the corporate citizenship defined by Section 1332(c)(1). However, Count I ¶ 6 does only half of the necessary job by referring to the principal place of business but *not* to the state of incorporation of defendant Crown Trust, Ltd. ("Crown Trust"). Even though there is no problem as to individual defendant Richard Jamieson ("Jamieson"), who has been identified as an Illinois citizen in Count I ¶ 5, the Section 1332(c)(1) gap as to Crown Trust is a fatal (even though it would seem likely to be a curable) deficiency. Federal jurisdiction must be established as a matter of certainty and not of mere probabilities (however high), so plaintiffs' counsel must return to the drawing board.

But there are other jurisdictional deficiencies disclosed by the Complaint that appear to be incurable—or if not, that would require substantially different allegations if the problems that they present were to be overcome. Each of the four plaintiffs (four rather than five are spoken of here, because Domingo and Ramiro Hernandez d/b/a Grupo Hernandez (collectively "Hernandez") may be treated as a single plaintiff for this purpose) has brought suit because Jamieson and Crown

The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

2. All further references to Title 28's provisions will simply take the form "Section—."

Trust allegedly failed to fund a written loan commitment attached as an exhibit to the Complaint. Under those circumstances federal jurisdiction must exist independently over each plaintiff's claim—that is the teaching of the seminal decision in *Zahn v. International Paper Co.*, 414 U.S. 291, 294–95, 94 S.Ct. 505, 508–09, 38 L.Ed.2d 511 (1973), and it has not been changed by Section 1367's later enactment of the concept of supplemental jurisdiction (in that respect see this Court's opinion in *Griffin v. Dana Point Condominium Ass'n*, 768 F.Supp. 1299, 1300–02 (N.D.Ill.1991); and cf., e.g., *Griffith v. Sealtite Corp.*, 903 F.2d 495, 498 (7th Cir. 1990)).

Aspe Arquitectos, S.A. de C.V. ("Aspe") has no difficulty in that respect. It provided Jamieson with a $200,000 deposit as security for its loan commitment (Count I ¶¶ 9–11), and Aspe seeks either the funding of the loan or the return of its deposit by way of relief.[3] That is of course more than ample to establish the over–$50,000 jurisdictional amount in controversy.

■ But each of the other plaintiffs founders on that over–$50,000 requirement. Counts III and IV reflect a like loan transaction involving Funerales San Juan, S.A. ("Funerales"), but in that instance the security deposit that was paid to Jamieson came to just $20,000 (Count III ¶¶ 9–11). Counts V and VI allege an identical transaction and an identical amount involving Hotel Paraiso Uruapan ("Hotel"), as reflected in Count V ¶¶ 9–11. And Counts VII and VIII allege identical claims by Hernandez, except that the deposit paid over to Jamieson was the even smaller sum of $13,333.33 (see Count VII ¶¶ 9–11).

■ In each instance the relief sought by a plaintiff is framed in the alternative: either disburse the loan or return the security deposit. As for the latter alternative, it is crystal-clear that none of the plaintiffs other than Aspe has the requisite more-than-$50,000 amount at stake. And the former alternative poses a number of equally obvious problems:

1. Like all loan commitments, those evidenced by the Complaint's exhibits (which of course prevail over any conclusory allegations in the body of the Complaint) contain a host of preconditions to disbursement. Nothing suggests that the prospective borrowers have satisfied all of those conditions so as to be fully entitled to performance.

2. Even if that difficulty were not present, there are difficult legal hurdles that stand in the way of specific performance of such an agreement (rather than damages for its breach)—and nothing in the Complaint is addressed to establishing the satisfaction of those requirements.

3. Finally, and even apart from those matters, a party that can demonstrate an opposing party's nonperformance of a loan commitment does *not* thereby establish that the amount in controversy for federal jurisdictional purposes is the amount of the loan itself. What is at stake instead is the value of the right of which the borrower has been deprived, and by definition that cannot be the amount of the loan (which of course must be repaid and thus presents a zero-sum game absent an affirmative showing of damages).

In short, each of Hotel, Funerales and Hernandez has confirmed by its alternative prayer for relief that its own "amount in controversy" is the amount of the security deposit that it seeks to recapture from Jamieson and Crown Trust. That being so, Counts III through VIII must be and are dismissed for lack of subject matter jurisdiction. Aspe, however, is granted until December 5, 1994 to cure the single jurisdictional defect in its claim identified at the outset of

---

**3.** To be a bit more precise, in each of the four transactions referred to in the Complaint Jamieson is alleged to have received two-thirds of the total security deposit paid into escrow by the borrower (for example, Aspe's total deposit was $300,000 (Count I ¶ 10)). But it would make no difference whether the amounts that are sought to be recovered by the respective plaintiffs are only the sums referred to in the text as having gone to Jamieson (that is the way that the ad damnum reads in each count) or the return of the borrower's entire security deposit, which is 50% higher in each instance—as the ensuing text discussion reflects, in each of the claims other than Aspe's the amount at issue is below the $50,000 floor.

this opinion, failing which this Court will be constrained to dismiss the entire Complaint and this action for lack of subject matter jurisdiction.