**Patricia BORGESON, on behalf of herself and all others similarly situated, Plaintiff,**

**v.**

**ARCHER–DANIELS MIDLAND CO., a Minnesota corporation; Cargill, Inc., a Delaware corporation; A.E. Staley Manufacturing Company, a Delaware corporation; CPC International, Inc., a Delaware corporation; and Does 1 through 50, Defendants.**

**Nedra GOINGS, on behalf of herself and all others similarly situated, Plaintiff,**

**v.**

**ARCHER–DANIELS MIDLAND CO., a Minnesota corporation; Cargill, Inc., a Delaware corporation; A.E. Staley Manufacturing Company, a Delaware corporation; CPC International, Inc., a Delaware corporation; and Does 1 through 50, Defendants.**

Nos. CV95–5745 ABC (AJWx), CV95–5746 ABC (AJWx).

United States District Court, C.D. California.

Oct. 12, 1995.

John N. Zarian, Mission Viejo, CA, Adam D. Duncan, Palsads, CA, Mark C. Rifkin, Haverford, PA, for Plaintiff, Nedra Goings.

Kevin M. Prongay, Palsads, CA, Eugene Mikolajczyk, Elizabethtown, PA, for Plaintiff, Patricia Borgeson.

Seyfarth, Shaw, Fairweather & Geraldson, Jerry M. Hill, David D. Jacobson, Steven B. Katz, Los Angeles, CA, for defendants.

## ORDER RE: REMAND
## TO STATE COURT

COLLINS, District Judge.

These related jurisdictional matters were taken under submission on September 22, 1995. After reviewing the materials submitted by the parties and the case file, the Court hereby REMANDS these actions to state court.

## I. Background

### A. Procedure

On July 21, 1995, Plaintiff PATRICIA BORGESON, on behalf of herself and all others similarly situated, filed a Complaint against ARCHER–DANIELS–MIDLAND CO. ("ADM"), CARGILL, INC. ("Cargill"), A.E. STALEY MANUFACTURING CO. ("Staley"), AND CPC INTERNATIONAL, INC. ("CPC"), in the Los Angeles County Superior Court.[1] Also on July 21, 1995, Plaintiff NEDRA GOINGS, on behalf of herself and all others similarly situated, filed a Complaint against the same Defendants in the Orange County Superior Court.

On August 25, 1995, Defendant Staley filed a Notices of Removal, asserting diversity jurisdiction over these actions under 28 U.S.C. § 1332.[2] After receiving Staley's Notices of Removal of the *Borgeson* case, the Court issued an Order to Show Cause ("OSC") why the action should not be remanded to state court for failing to show a proper basis for federal court jurisdiction.[3] The Court listed two grounds for its OSC. First, Staley failed to show that the other defendants (Cargill, ADM, and CPC) had joined in the removal. Staley has satisfied the Court's concern on this ground.[4] Second, and more importantly, the Court ordered Staley to show that the requirements for diversity jurisdiction were satisfied.

On September 11, 1995, Defendant Staley filed a Response to OSC re: Remand. On September 15, 1995, Plaintiff filed a Memorandum of Points and Authorities in Re-

---

1. This case has not been certified as a class action, but the Court will assume, without deciding, that it would be certified solely for the purposes of determining jurisdiction. *See City of Inglewood v. City of Los Angeles,* 451 F.2d 948, 951–5 (9th Cir.1971).

2. The *Goings* action was originally assigned to Judge Phaelzer in this district. On September 26, 1995, the *Goings* case was transferred to this Court.

3. The *Borgeson* OSC was issued on August 31, 1995. However, the *Goings* action was not transferred to this Court's docket until September 26, 1995. Therefore, the Court's OSC only related to the *Borgeson* case. Because the *Goings* and *Borgeson* cases are fundamentally identical, this Court's Order will apply to both matters.

4. On August 28, 1995, Defendant ADM filed Notices of Joinder in both of Staley's Notices of Removal (in the *Borgeson* and *Goings* actions). On August 28, 1995, Defendant Cargill filed a Notices of Joinder in Staley's Notices of Removal. On August 25, 1995, Defendant CPC filed Notices of Removal in both actions. On August 30, 1995, Defendant CPC filed Notices of Joinder in Staley's Notices of Removal.

sponse to OSC re: Remand, in support of remand to state court.[5] On September 22, 1995, Defendant Staley filed a Reply.[6]

On September 11, 1995, Defendants filed a joint motion before the Judicial Panel on Multi–District Litigation to transfer this action and others to the Southern District of Iowa for coordinated and consolidated pretrial proceedings. On September 29, 1995, Plaintiffs in the actions filed a response.

## B. Plaintiff's Allegations

In both the *Borgeson* and *Goings* Complaints, Plaintiffs allege as follows:

1.) At least as early as July 1992 and through the present, Defendants entered into and have engaged in a contract, combination, and conspiracy to suppress competition and unreasonably restrain commerce and trade, by fixing the prices of high-fructose corn syrup and/or its by-products ("corn syrup") sold to consumers in the State of California. Corn syrup is a corn-derived sweetener sold in pure form and used in most soft drinks, as well as some baked goods and other food products. There is no substitute for corn syrup in the production, manufacture, distribution, and sale of many consumer products. Corn syrup is a fungible product, and the corn syrup produced by one company is completely interchangeable with that of any other company.

2.) As a result Defendants' conduct, the price of corn syrup has increased in recent years at a substantially faster rate than the price of the raw materials.

3.) During the relevant time period, Defendants have sold many millions of dollars of corn syrup in the United States, and a significant portion of those sales has occurred in the State of California.

4.) Because of Defendants' conduct, there are significant barriers to new competitors wishing to enter the corn syrup industry.

5.) In 1992, Mark E. Whitacre ("Whitacre"), an executive of ADM, agreed to cooperate with a federal investigation into possible anti-trust law violations after company officials had asked him to participate in collusive pricing agreements. Since that time, Whitacre has recorded hundreds of conversations and meetings involving employees of Defendants ADM, Cargill, Staley, and CPC.

6.) In June and July of 1995, the national press reported that Defendants were the subject of a major criminal antitrust investigation by the Federal Bureau of Investigation ("FBI"). ADM is the primary target of the federal investigation. Numerous managers and executives of ADM, as well as each of the other Defendants, have received subpoenas and/or have had search warrants executed against them. A grand jury in Chicago has begun hearing evidence as a result of that investigation.

7.) As a result of Defendants' alleged wrongdoing, corn syrup prices have remained at an artificially high and uncompetitive level. In addition, competition for the sale of corn sweetener products has been unreasonably restrained in the State of California.

8.) Therefore, the prices that Plaintiffs and other members of the classes have paid are higher than the prices would be in a free and competitive market.

Plaintiffs pray for the following relief: an order certifying these actions as class actions, with Plaintiffs as the representatives of the classes and Plaintiffs' counsel as class counsel; judgment that the acts of the Defendants constitute unlawful and unreasonable restraint of trade and unfair competition; treble damages; fees; costs; disgorgement and restitution; and, such other relief as the Court deems just and proper.

## II. Discussion

### A. Removal Jurisdiction Standard

■ When an action could have been brought originally in federal court based on diversity jurisdiction, *see* 28 U.S.C. § 1332, a district court has removal jurisdiction pursuant to 28 U.S.C. § 1441. District courts have original jurisdiction under 28 U.S.C. § 1332

---

5. On September 15, 1995, Plaintiff Goings joined in the Response by Plaintiff Borgeson to the OSC, supporting remand to state court.

6. Because the Court finds this issue well briefed by the parties, the Court has taken the matter under submission.

where the civil action is between *citizens* of different states, and the amount in controversy exceeds $50,000. In a class action, only the domicile of the class representative (plaintiff) is considered, rather than that of the class members. William W. Schwarzer, et al., *Federal Civil Procedure Before Trial* ¶ 10:394 (*citing Supreme Tribe of Ben Hur v. Cauble*, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921); *see also Friedman v. Meyers* 482 F.2d 435 (2nd Cir.1973). For the purposes of diversity jurisdiction, a corporation is deemed to have two (2) states of citizenship—its state of incorporation and the state wherein it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1).

■ On removal, the burden of establishing grounds for federal jurisdiction rests on the defendant. Indeed, there is a "strong presumption" *against* removal jurisdiction. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). Accordingly, when there is doubt as to removability, it is resolved in favor of remanding the case to state court. Schwarzer, et al., *supra*, ¶ 2:606 (citing *Gaus*, 980 F.2d 564; *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941))

## B. Analysis

### 1. Diversity of Citizenship

Plaintiffs Borgeson and Goings are citizens of the State of California. Defendant STALEY is incorporated in the state of Delaware and its principal place of business is in Illinois. Defendant ADM is a Minnesota Corporation with its principal place of business in the State of Illinois.[7] Defendant CPC is a Delaware Corporation with its principal place of business in New York. Since no Defendant is a citizen of the same state as the Plaintiff, and the Court need not consider the citizenship of defendants sued under fictitious names (Does), there is diversity of citizenship. 28 U.S.C. § 1441(a) ("For purposes of removal … the citizenship of defendants sued under fictitious names shall be disregarded.").

## 2. Amount in Controversy

Defendant Staley argues that the amount in controversy requirement can be satisfied in one of two ways. First, Staley asserts that the entire amount of the attorneys' fees should be allocated to the named Plaintiffs, giving the Court jurisdiction over their claims, and that the Court should then assert supplemental jurisdiction over the other members of the classes based on 28 U.S.C. § 1367. Alternatively, Defendant Staley contends that punitive damages should be considered a "common and undivided" interest shared by all the class members, giving the Court jurisdiction over both of the entire classes.

### a. The Validity of the United States Supreme Court's Decision in *Zahn v. Int'l. Paper Co.*

■ Defendant Staley's argument that all attorneys' fees should be attributed to the named Plaintiffs, and that the Court should use supplemental jurisdiction, contradicts the rulings in *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), and *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1366–67 (9th Cir.1982), *cert. denied*, 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982). Staley first argues that *Zahn* has been legislatively overruled, and, because the *Goldberg* court relied on *Zahn*, suggests that *Goldberg* is no longer sound authority. The Court must therefore address the threshold issue of the validity of the Supreme Court's decision in *Zahn*.

### i. *Zahn* and its History

In *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *reh'g denied* 394 U.S. 1025, 89 S.Ct. 1622, 23 L.Ed.2d 50 (1969), the United States Supreme Court was faced with the issue of whether the 1966 amendments to Federal Rule of Civil Procedure 23 changed the law regarding the aggregation of claims in class actions. In *Snyder* the Supreme Court consolidated two cases, one in which a shareholder brought a class action against corporation directors,

---

**7.** In their Notice of Removal, Defendant STALEY states that Defendant ADM is a Delaware corporation, when in fact, Defendant ADM is a Minnesota corporation. Notice of Removal, p. 4, ¶ 7. However, this misstatement is irrelevant for the purposes of determining diversity jurisdiction.

and the other in which a customer brought a class action against a gas company to recover alleged overpayment. Both cases involved separate and distinct claims, and *no member* of the class alleged damages satisfying the amount in controversy (at that time $10,000).

In its opinion, the *Snyder* Court traced the development of the jurisdictional amount in controversy requirement since the first congressional grant of jurisdiction in 1789. The Court emphasized that the long-standing judicial interpretation has been that "separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Id.* at 335, 89 S.Ct. at 1056. In a case with two or more plaintiffs, aggregation is permitted only when the plaintiffs "unite to enforce a single title or right in which they have a common and undivided interest". *Id.* at 335, 89 S.Ct. at 1056.

In deciding that the 1966 amendments to Rule 23 did not change the rules of aggregation, the Supreme Court reasoned that the doctrine of aggregation of claims was not and had never been based on the categories of Rule 23, nor on any rule of procedure. Rather, the doctrine is in fact based on the Supreme Court's interpretation of "matter in controversy," within the meaning of the diversity statute. *Id.* at 336, 89 S.Ct. at 1057. The Supreme Court's interpretation of "matter in controversy" dates back to 1911, and has been applied to class actions since 1939. *Id.* at 336–37, 89 S.Ct. at 1056–57. Congress, well aware of the Supreme Court's settled interpretation of the language, has never changed the wording of the statute, despite its numerous increases of the actual "amount" required for jurisdiction. *Id.* at 338–39, 89 S.Ct. at 1057–58.

In *Zahn*, the Court was presented with a similar, yet distinct question. In *Zahn*, the main plaintiffs satisfied the amount in controversy requirement, but the rest of the class did not. On these facts, the *Zahn* Court refused to extend diversity jurisdiction to the remaining members of the class. In essence, the Court again found that the amount in controversy requirement could not be aggregated or shared.

In reaching its decision, the *Zahn* Court specifically *reaffirmed* the reasoning of the *Snyder* court. *Id.* at 293–302, 94 S.Ct. at 507–12. Acknowledging that *Snyder* involved class actions in which *no member* of the class had claims that satisfied the amount in controversy requirement, the *Zahn* court stated "there is no doubt that the rationale of that case controls this one". *Zahn,* 414 U.S. at 300, 94 S.Ct. at 511. In sum, the *Snyder* rule holds that separate and distinct claims may not be aggregated for the purposes of the amount in controversy requirement, thus forcing the remand of cases in which no member of the class meets the amount in controversy requirement. *Zahn* follows *Snyder* by requiring the dismissal of class members who do not meet the amount in controversy requirement, even if some members do. *Zahn,* 414 U.S. at 300, 94 S.Ct. at 511; *see also Clark v. Paul Gray, Inc.,* 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939) (dismissing from the suit all plaintiffs who did not have a sufficiently large claim).

In addition, the *Zahn* Court reasoned that if Congress wanted to change the Supreme Court's interpretation of the statutory language, there would have been some "express statement" to that effect in either the amendments or in the official commentaries. *Zahn,* 414 U.S. at 302, 94 S.Ct. at 512. In the absence of such an express statement, the Supreme Court declined to alter its prior rulings.

### ii. The Effect of the Judicial Improvements Act of 1990

In 1990, Congress passed the Judicial Improvements Act of 1990 ("the Act") amending 28 U.S.C. § 1367 to create "supplemental" jurisdiction out of pendent and ancillary jurisdiction. Section 1367 now states in relevant part:

(a) Except as provided in subsections (b) and (c) or *as expressly provided otherwise by Federal statute,* in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States

Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a) (emphasis added). This broad grant of jurisdiction is limited by subsection (b) which specifies the circumstances in which the district courts shall not have jurisdiction.[8] In addition, the grant is limited as otherwise provided in federal statutes (such as 28 U.S.C. § 1332). Congress' creation of supplemental jurisdiction has led many to question the validity of prior Supreme Court rulings such as *Zahn* and *Snyder*.[9]

Defendant Staley asserts that the supplemental jurisdiction amendments legislatively overruled the Supreme Court's decision in *Zahn*. The Ninth Circuit has not yet spoken on this issue. In support of its position, however, Staley cites a recent Fifth Circuit case, *In re: Abbott Laboratories*, 51 F.3d 524 (5th Cir.1995) *reh'g and sug. reh'g en banc denied*, 65 F.3d 33 (5th Cir.1995), which involved a similar class action based on state antitrust violations. In *Abbott*, the Fifth Circuit reasoned that because the restrictions listed in subsection (b) do not refer to Rule 23 or class actions, then class actions must be included in the general rule of subsection (a). That would mean that district courts would have supplemental jurisdiction over the claims of class members who did not meet the amount in controversy requirement. *Ab-*

bott, 51 F.3d at 527–28. This interpretation directly contradicts the Supreme Court's *Zahn* ruling.

In reaching its conclusion, the *Abbott* court applied a plain meaning approach to statutory interpretation, declining to examine the legislative history of the Act. Indeed, the Fifth Circuit reached this conclusion even though the legislative history clearly indicates that Congress did not intend to overrule *Zahn* or *Snyder*. The House Report accompanying the Act states that "district courts may exercise supplemental jurisdiction, except when to do so would be inconsistent with the jurisdictional requirements of the diversity statute." H.R.Rep. No. 734, 101st Cong., 2d Sess. 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875. In addition, supplemental jurisdiction "is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to *Finley* [*v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) ]." *Id.* at 6875.[10] Further, the House Report cites *Supreme Tribe of Ben Hur* and *Zahn* as representing the pre-*Finley* interpretation. *Id.* at 6875 & n. 17. The *Abbott* court stated that it is improper to search the legislative history for congressional intent unless the statute is unclear or ambiguous. *Abbott*, 51 F.3d at 528–29 (citations omitted). Other than the Fifth Circuit case, the Court has found only a few district court cases finding that Section

8. 28 U.S.C. § 1367(b) states:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

9. *See generally*, Joan Steinman, *Section 1367—Another Party Heard From*, 41 Emory L.J. 85, 102–3 (1992) (suggesting that the courts interpret the Act to legislatively overrule *Zahn* ); Richard D. Freer, *Compounding Confusion and Hampering Diversity: Life After Finley and the Supple-*

*mental Jurisdiction Statute*, 40 Emory L.J. 445, 485–86 (1991) (stating that the plain language of the Act overrules *Zahn*, but contradicts the legislative history); Thomas C. Arthur & Richard D. Freer, *Grasping at Burnt Straws: The Disaster of the Supplemental Jurisdiction Statute*, 40 Emory L.J. 963, 981 (1991) (same). *Contra* Thomas D. Rowe, Jr., Stephen B. Burbank, & Thomas M. Mengler, *Compounding or Creating Confusion About Supplemental Jurisdiction? A Reply to Professor Freer*, 40 Emory L.J. 943, 949 n. 27, 960 n. 90 (1991) (authors who drafted the Act stating that the legislative history was "an attempt to correct an oversight" in the Act that led some commentators to assert that the Act overruled *Zahn* ).

10. In *Finley* the Supreme Court prevented a plaintiff who had satisfied original subject matter jurisdiction under the Federal Tort Claims Act from adding a transactionally-related state claim against a different, non-diverse defendant.

1367 legislatively overrules *Zahn.*[11] However, a plethora of cases hold that *Zahn* is untouched by the supplemental jurisdiction amendments. *See, e.g., Duet v. Lawes,* 1994 WL 151095, at *2 (E.D.La.1994) (holding that *Zahn* is not overruled based on argument that the claims of the co-plaintiffs are part of the initial civil action, not "other claims" and therefore Section 1367 does not apply to the claims of co-plaintiffs); *Leroy Cattle Co., Inc. v. Fina Oil & Chemical Co.,* 1994 WL 151105 (D.Kan.1994) (holding *Zahn* is not overruled and noting that Congress could not list Rule 23 in subsection (b) because to do so would have the effect of overruling the Supreme Court's decision in *Supreme Tribe,* that only named parties have to meet the diverse citizenship requirement); *Stoumen v. Public Service Mut. Ins. Co.,* 1994 WL 111355 (E.D.Pa.1994) (upholding *Zahn* based on an examination of the legislative history and agreement with the reasoning in the preponderance of district courts that have reached a like decision); *Clement v. Occidental Chem. Corp.,* 1994 WL 479155, *11–20 (E.D.La. 1994) (examining the legislative history to find that the Act does not weaken the *Zahn* doctrine); *Leung v. Checker Motors Corp.,* 1993 WL 515470, *2 (N.D.Ill.1993) ("Although this provision does not directly address the issue of supplemental jurisdiction over original plaintiffs whose claims do not meet the jurisdictional requirements, ..., the implication is that plaintiffs without an independent ticket of entry to federal court should not be able to get into federal court by 'piggybacking' onto other claims which do satisfy the jurisdictional requirements."); *Griffin v. Dana Point Condominium Ass'n.,* 768 F.Supp. 1299, 1301–02 & n. 4 (N.D.Ill. 1991) ("a close look at both the language of the statute and its legislative history teaches that the new provision does not change the old law in this area at all.").[12]

Furthermore, it is evident that the plain language of subsection (a) is entirely *consistent* with *Zahn.* Through the incorporation of the language *"or as expressly provided otherwise by federal statute"*, Congress specifically included as an exception to § 1367(a) any other federal statute, including § 1332 (and its most relevant judicial interpretations *Zahn* and *Snyder*) (emphasis added). Despite references to diversity jurisdiction and § 1332, and with full knowledge of the Supreme Court's long-standing interpretation of that language, nowhere in the Act did Congress change the language of § 1332. In choosing once again to keep the language of § 1332 in its original form, Congress reaffirmed the Supreme Court's historical treatment of the language "matter in controversy".

Taking into account the plain language of § 1367, the purpose of the Act (as expressed in the legislative history), and the fact that Congress has raised the amount in controversy limit steadily over the years, without

---

11. *See, e.g. Lindsay v. Kvortek,* 865 F.Supp. 264 (W.D.Pa.1994) (determining based on a plain language reading of the statute that Section 1367 legislatively overrules *Zahn;* case did not involve a class action); *Garza v. National Am. Ins. Co.,* 807 F.Supp. 1256, 1258 (M.D.La.1992) (same); *Patterson Enter., Inc. v. Bridgestone/Firestone, Inc.,* 812 F.Supp. 1152, 1154 (D.Kan.1993) (same); *Booty v. Shoney's, Inc.,* 872 F.Supp. 1524 (E.D.La.1995) (holding that if the requirements of § 1367(a) are met and the case does not fit one of the exceptions enumerated in (b), the district court has jurisdiction; case was not a class action).

12. *See also Riverside Transp., Inc. v. Bellsouth Telecommunications, Inc.,* 847 F.Supp. 453, 455– 56 (M.D.La.1994); *Pierson v. Perrier,* 848 F.Supp. 1186 (E.D.Pa.1994); *North American Mechanical Servs. Corp. v. Hubert,* 859 F.Supp. 1186, 1188– 89 (C.D.Ill.1994); *Neve Bros. v. Potash Corp. (In re Potash Antitrust Litig.),* 866 F.Supp. 406, 414 (D.Minn.1994); *Henkel v. ITT Bowest Corp.,* 872 F.Supp. 872, 877 (D.Kan.1994); *Aspe Arquitectos, S.A. de C.V. v. Jamieson,* 869 F.Supp. 593, 595 (N.D.Ill.1994); *Dirosa v. Grass,* 1994 WL 583276, at *2 (E.D.La.1994); *Kaplan v. Mentor Corp.,* 1994 U.S.Dist. LEXIS 15779, at *3 (N.D.Ill.1994), *supplemented,* 1994 WL 592081, 1994 U.S.Dist. LEXIS 15410 (E.D.Ill.1994); *Benninghoff v. Tolson,* 1994 WL 519745, at *4 (E.D.Pa.1994); *Mayo v. Key Fin. Serv., Inc.,* 812 F.Supp. 277, 278 (D.Mass.1993); *Chouest v. American Airlines, Inc.,* 839 F.Supp. 412, 414– 415 (E.D.La.1993); *Hairston v. Home Loan and Inv. Bank,* 814 F.Supp. 180, 181 n. 1 (D.Mass. 1993); *Benfield v. Mocatta Metals Corp.,* 1993 WL 148978 (S.D.N.Y.1993); *Averdick v. Republic Fin. Serv., Inc.,* 803 F.Supp. 37, 45–46 (E.D.Ky. 1992); *Bradbury v. Robertson–Ceco Corp.,* 1992 WL 178648 1994 U.S.Dist. LEXIS 15100 (N.D.Ill.1992); *Fink v. Heath,* 1991 WL 127664, at *3 (N.D.Ill.1991); *Cheramie v. Texaco, Inc.,* 1991 WL 236784 (E.D.La.1991).

ever indicating that the Supreme Court's interpretation of the "matter in controversy" in class actions was contrary to Congressional intent, the Court finds no basis for holding that *Zahn* has been legislatively overruled. Therefore, the Court, unpersuaded by Defendant Staley's arguments, must follow the established rule that in a class action involving separate and distinct claims, every member must satisfy the requirements of § 1332 in order for a federal court to exercise diversity jurisdiction over the entire class action.[13]

### b. Common and Undivided Interest

■ While the general rule is that claims cannot be aggregated in order to satisfy the amount in controversy requirement, there is a long-recognized exception to this rule. When parties have a "common and undivided" interest, claims *can* be aggregated to satisfy the amount in controversy requirement. *Zahn,* 414 U.S. at 293, 94 S.Ct. at 507–08; *Snyder,* 394 U.S. at 334, 89 S.Ct. at 1055–56. Staley asserts that punitive damages are the "common and undivided" interest of all members of the class, and should therefore be aggregated to establish the necessary amount in controversy.

The Ninth Circuit has stated that claims are properly aggregated only when the claims "derive from rights which [the plaintiffs] hold in group status." *Potrero Hill Community Action Comm. v. Housing Authority,* 410 F.2d 974 (9th Cir.1969); *see also Eagle v. American Tel. & Tel. Co.,* 769 F.2d 541 (9th Cir.1985), *cert. denied,* 475 U.S. 1084, 106 S.Ct. 1465, 89 L.Ed.2d 721 (1986); *United States v. Southern Pac. Trans. Co.,* 543 F.2d 676 (9th Cir.1976); *Snow v. Ford*

*Motor Co.,* 561 F.2d 787 (9th Cir.1977). In *Potrero,* the Ninth Circuit held that because each Plaintiff's rights arose from the contract between each plaintiff and the Housing Authority, their rights were individual rather than common and undivided. *Potrero,* at 978. *Potrero* is analogous to the facts before the Court in this case: here, each member of the class derives his or her claim from individual purchases of corn syrup. The Ninth Circuit has further stated that even though plaintiffs' claims may present common questions of law and fact, if the statute authorizing the cause of action bestows the right on the *individual,* not the group, then plaintiffs' claims arise from their *individual rights* rather than their group status. *Southern Pacific,* 543 F.2d at 683. *See also Kasky v. Perrier Group of America, Inc.,* 1991 WL 577038 (S.D.Cal.1991) (reaffirming the validity of the Ninth Circuit's opinion in *Southern Pacific* ).

■ In addition to establishing a public cause of action (enforced by the State Attorney General), the Cartwright Act gives a private right to sue for damages and treble damages to *each person* who suffers harm. West's Ann.Cal.Bus. & Prof.Code §§ 16750 *et seq.* (1987). The plain language of the Cartwright Act demonstrates that the California legislature intended to vindicate *individual* rights through private causes of action.[14] Therefore, each purchaser of corn syrup could theoretically sue individually for treble damages under the Cartwright Act.

■ Furthermore, in order to determine whether the claims may be aggregated, the

---

**13.** Defendant Staley's argument that the Court should exercise supplemental jurisdiction over the claims of the class members hinges on the additional argument that the named Plaintiffs meet the amount in controversy requirement.

Defendant Staley argues that the amount in controversy requirement can be met for the named Plaintiffs in these cases by attributing all the attorneys' fees to them. Defendant Staley suggests that the Court should be persuaded on this issue by the Fifth Circuit's reasoning in *Abbott,* 51 F.3d at 526. This argument *directly contradicts* Ninth Circuit authority holding that attorney's fees must be attributed to each member on a pro rata basis, and more specifically that attorneys' fees *cannot* be aggregated for jurisdictional purposes. *Goldberg v. CPC Int'l, Inc.,*

678 F.2d 1365, 1366–67 (9th Cir.1982), *cert. denied,* 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982); *Czechowski v. Tandy Corp.,* 731 F.Supp. 406, 409–10 (N.D.Cal.1990).

Staley asserts that *Goldberg* is no longer sound authority due to the *Goldberg* court's reliance on *Zahn.* As discussed above, *Zahn* is still good authority; therefore, so is *Goldberg.* Because the Court finds the doctrine of *Zahn* to be unaffected by the Act, thereby erasing any grounds for the extension of supplemental jurisdiction in this case, Defendant Staley's arguments on the subject of attorneys' fees are irrelevant.

**14.** The Cartwright Act provides for group rights through the public cause of action. West's Ann. Cal.Bus. & Prof.Code §§ 16750 *et seq.* (1987).

Court must first characterize the claim under the law in the state that creates the cause of action. *Eagle,* 769 F.2d 541. Defendant asserts that the Court should find persuasive the reasoning of a Fifth Circuit case that finds that punicle damages are a common and undivided interest. *See Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326 (5th Cir.1995). In *Allen,* the Fifth Circuit stated that under Mississippi law, 1) punitive damages are fundamentally collective; 2) the nature of punitive damages is to punish the wrongdoer and to protect society; 3) the benefits are meant to accrue to society; 4) because it is within the discretion of the judge or jury to award or withhold them, plaintiffs do not have a claim of right to punitive damages; and, that this unique nature of punitive damages requires:

> "that the full amount of alleged damages be counted against each plaintiff in determining the jurisdictional amount. As punitive damages are collective awards, each plaintiff has an integrated right to the full amount of the award."

*Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1333–34 (5th Cir.1995). California law attributes those same qualities to punitive damages. *See Chronicle Publishing Co. v. Legrand,* 1992 WL 420808 (N.D.Cal.1992) (discussing and summarizing California law on punitive damages).

■ However, in the cases before the Court, the Plaintiffs seek only the *treble damages* authorized in the Cartwright Act. Plaintiffs do not seek "punitive damages." [15] While treble damages are punitive in nature, and therefore a portion of the Fifth Circuit's discussion of punitive damages would apply to them with equal force, the Cartwright Act

gives plaintiffs a *specific right to these damages.* The fact that treble damages are guaranteed distinguishes the instant case from the Fifth Circuit case, in which punitives were left to the discretion of the court or jury. Here, each individual plaintiff could sue for treble damages independently. This differentiates the instant case from the Fifth Circuit's holding in *Allen.*

In addition, even if the Court were to analogize treble damages to punitive damages, the Ninth Circuit has not ruled on the issue of whether punitive damages constitute a common and undivided interest, and the district courts that have addressed the subject are split in their decisions. A case from the Northern District of California held that punitive damages *are* a common and undivided interest that could be used to satisfy the amount in controversy requirement. However, the district court also held that jurisdiction was proper on an alternative ground. *See In re: Northern Dist. of California "Dalkon Shield" IUD Products Liability Litigation,* 526 F.Supp. 887 (N.D.Cal.1981).[16] However, the Court is reluctant to be guided by the Northern District court's reasoning because that court based its punitive damages holding on *Berman v. Narragansett Racing Association, Inc.,* 414 F.2d 311 (1st Cir.1969). The Ninth Circuit specifically disapproved *Berman,* stating that it had probably been overruled by *Zahn. United States v. Southern Pacific Trans. Co.,* 543 F.2d 676, 683 (9th Cir.1976).

Moreover, district courts in the Central and Southern Districts of California have held that members of a class *do not* have a common and undivided interest in punitive

---

**15.** Defendant Staley argues that Plaintiffs could amend their Complaints to ask for punitive damages in lieu of treble damages. But the Court is bound to evaluate jurisdiction based on the claims in the Complaints as they now stand. If in the future, Plaintiffs amend their Complaints to pray for punitive damages, and the Defendant believed that the Amended Complaint stated a basis for federal jurisdiction, then Defendant could seek to remove once again. The Defendants' right to remove would commence when first put on notice that federal jurisdiction might exist. Schwarzer, et al., ¶ 2:666 (citing 28 U.S.C. § 1446(b)). However, the Court is not presented with this question today.

**16.** It has been argued that the Ninth Circuit impliedly gave its approval to the Northern District court's reasoning, but when the Ninth Circuit vacated and remanded that decision, the Ninth Circuit said only that the district court asserted "jurisdiction on the basis of diversity of citizenship" without stating whether jurisdiction was proper and if so, on which of the two (2) alternative grounds. *In re: Northern Dist. of California "Dalkon Shield" IUD Products Liability Litigation,* 693 F.2d 847, 849 (9th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983).

damages. *See Smiley v. Citibank (South Dakota), N.A.*, 863 F.Supp. 1156 (C.D.Cal. 1993) (Credit cardholder brought putative class action in state court seeking damages and injunctive relief against credit card issuer, alleging that issuer's practice of charging late fees violated California law); *Kasky v. Perrier Group of America, Inc.*, 1991 WL 577038 (S.D.Cal.1991) (Class action brought against Perrier on allegations of misrepresentation through advertising and product labelling).

Because of the difference in nature between punitive damages and the treble damages involved in this case, the Court is not inclined to accept the reasoning of the *Allen* court. Further, even if one were to analogize treble damages to punitive damages, the Court still concludes that treble damages cannot be aggregated for the purposes of the amount in controversy requirement. The treble damages in these cases must be attributed pro rata to each member of the classes for the purposes of determining if the amount in controversy requirement has been met.

Nowhere in the Complaints, the Notices of Removal, or in Defendant Staley's Response to the OSC is it alleged that each individual class member has a claim, including treble damages and attorneys' fees, that exceeds $50,000. Rather, in asserting diversity jurisdiction as a basis for removal jurisdiction, Defendant Staley relies on the above theories to either change the amount in controversy requirement or to consider the treble or punitive damages as a "common and undivided" interest. Having found neither of Defendant's theories persuasive, the Court finds that Plaintiff fails to satisfy the amount in controversy requirement. The Court therefore has no jurisdiction over these cases.

### III. Conclusion

For all of these reasons, the Court hereby REMANDS these cases to state court.

**SO ORDERED.**