Devin DANIELS, Bryce Clements, and Daimon Fullerton, et al., Plaintiffs,

v.

PHILIP MORRIS COMPANIES, INC., et al., Defendants.

No. 98–836–IEG(CGA).

United States District Court, S.D. California.

Aug. 7, 1998.

Norman B. Blumenthal, Blumenthal Ostroff and Markham, San Diego, CA, for Devin Daniels, Bryce Clements, Daimon Fullerton.

Gerald L. McMahon, Seltzer Caplan Wilkins and McMahon, San Diego, CA, for Philip Morris Companies, Inc., Philip Morris Inc.

Robert C. Wright, Wright and LEstrange, San Diego, CA, RJR Nabisco Holdings Corp., RJR Nabisco Inc.

Willaim S. Boggs, Gray Cary Ware and Freidenrich, San Diego, CA, for Lorillard, Inc.

Duane Tyler, Coughlan Semmer and Lipman, San Diego, CA, for UST, Inc., U.S. Tobacco Co.

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

GONZALEZ, District Judge.

### BACKGROUND

On April 2, 1998, plaintiffs filed a class action lawsuit in San Diego Superior Court against defendant tobacco companies based on a single claim of unfair and deceptive business practices under Cal. Bus. & Prof. Code § 17200 et seq.[1] In the complaint, plaintiffs allege that (a) defendants' advertising practices are deceptive because they fail to warn consumers of the addictive nature of tobacco; (b) as a result of these deceptive practices, plaintiffs have become addicted to cigarettes; and, (c) this addiction has cost the plaintiffs thousands of dollars each in cigarette purchases. This lawsuit is an effort

---

1. According to the complaint, the class is composed of Californians "that, in the last four years, would likely have been deceived by Defendants' deceptive warning labels and advertising campaigns as to the addictive nature of cigarettes, and that have become addicted to cigarettes due to the addictive nature of nicotine." Complaint, ¶ 38.

to recoup those expenditures.[2] In their prayer for relief, plaintiffs request (a) restitution; (b) an injunction to prohibit defendants from engaging in deceptive advertising; (c) costs of the suit; and, (d) attorney's fees.

On May 4, 1998, defendants filed a notice of removal under 28 U.S.C. § 1441. In their notice, defendants noted that this Court has jurisdiction over the case based on diversity jurisdiction. Defendants contend there is complete diversity between the parties and the amount in controversy requirement is satisfied because "the Complaint alleges substantial restitution damages and also seeks equitable relief and attorney's fees." Removal Notice, ¶ 6. On June 3, 1998, plaintiffs filed the instant motion to remand. In their moving papers, plaintiffs contend that (a) to defeat a remand, defendants must establish that each plaintiff's individual claim exceeds the jurisdictional amount and (b) defendants cannot satisfy this burden. In opposition, defendants argue that (a) they do not have to establish that each class member's claim meets the amount-in-controversy requirement and (b) assuming arguendo they have such an obligation, they meet it in this case.

## DISCUSSION

### A. Standard for Motion to Remand

▄▄▄ A federal court may exercise removal jurisdiction over a case only if jurisdiction existed over the suit as originally brought by the plaintiff. 28 U.S.C. § 1441(a). A strong presumption exists against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). Accordingly, when there is a doubt as to removability, it is resolved in favor of remanding the case to state court. *Id.* The removing party bears the burden of establishing that federal subject matter jurisdiction exists.

*Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988). In order to establish removal jurisdiction over a diversity action, the removing defendants must establish compliance with 28 U.S.C. § 1332(a), which provides for diversity jurisdiction where (a) the amount in controversy exceeds $75,000.00 and (b) the suit is between citizens of different states. Where the complaint does not allege a specific amount of damages, the removing defendants must prove, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 862 (9th Cir.1996).

### B. Analysis

#### 1. Does the $75,000 Requirement Apply to Each Member of the Class?

▄▄▄ Before reviewing defendants' evidence that the amount in controversy requirement is satisfied in the instant case, the Court must first determine whether defendants must prove that each class member's claims comply with the $75,000 requirement. In *Zahn v. International Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), the Supreme Court held that, in a class action, each class member's claims must independently satisfy the amount in controversy requirement to establish diversity jurisdiction.[3] Therefore, under *Zahn*, defendants must demonstrate that each class member's claim exceeds the $75,000 requirement. Otherwise, in the absence of such a showing, the Court would not have jurisdiction over the class and the case would have to be remanded. In 1990, however, Congress passed the Judicial Improvements Act which amended 28 U.S.C. § 1367 to create "supplemental" jurisdiction out of pendent and ancillary jurisdiction.[4] As a result of these modifications,

---

**2.** "This action is brought to seek restitution of the costs to class members to purchase the cigarettes needed to maintain their smoking addiction created by Defendants' false and deceptive advertising ..." Complaint, ¶ 24. A copy of the complaint is attached to defendants' notice of removal.

**3.** This is sometimes referred to as the "non-aggregation" doctrine, i.e. individual claims can-

not be aggregated to satisfy the amount in controversy requirement.

**4.** Section 1367 provides, in pertinent part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related

which provide district courts with supplemental jurisdiction "over all other claims that are so related to claims in the action [for which the court has] original jurisdiction that they form part of the same case or controversy," it remains uncertain whether *Zahn* is still good law. 28 U.S.C. § 1367(a).

Defendants argue that the amendments to § 1367 effectively overrule *Zahn* because, under § 1367, if defendants establish that the claims of some class members satisfy the $75,000 requirement, then the Court can assert supplemental jurisdiction over the claims of any remaining class members that do not meet the amount in controversy requirement. To support that assertion, defendants cite to *In re Abbott Laboratories*, 51 F.3d 524 (5th Cir.1995) and *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928 (7th Cir.1996). In *Abbott*, the Fifth Circuit squarely addressed the issue of whether the 1990 revisions to § 1367 effectively overruled *Zahn* and found that they did; the *Abbott* Court held that a court may properly assert supplemental jurisdiction over the claims of class members which did not independently satisfy the amount in controversy requirement. In finding that *Zahn* did not survive the revisions to § 1367, the *Abbott* Court indicated that the statute was unambiguous on its face and, therefore, it was unnecessary to examine the legislative history to ascertain the statute's meaning. *Abbott*, 51 F.3d at 528. In particular, the Court noted that § 1367(a) provided for the existence of supplemental jurisdiction subject to certain exceptions set forth in § 1367(b). *Id.* 51 F.3d at 528–29. The *Abbott* Court reasoned that the absence of class actions in the list of enumerated exceptions to supplemental jurisdiction (§ 1367(b)) necessarily meant that class actions were subject to district courts' supplemental jurisdiction and, therefore, compliance with the amount in controversy requirement for all class members was unnecessary so long as some class members satisfied the requirement. *Id.* In *Stromberg*, the Seventh Circuit adopted the reasoning of *Abbott. Stromberg*, 77 F.3d at 930.

Against the backdrop of these two cases, plaintiffs underscore the fact that all of the district courts in the Ninth Circuit to consider the issue have (a) distinguished *Abbott* and *Stromberg*; (b) found that *Zahn* survived the amendments to § 1367;[5] and, therefore, (c) required that the claims of each class member individually satisfy the amount in controversy requirement. *See Snider v. Stimson Lumber Co.*, 914 F.Supp. 388 (E.D.Cal.1996) (distinguishing *Abbott*); *Tortola Restaurants, L.P. v. Kimberly–Clark Corp.*, 987 F.Supp. 1186 (N.D.Cal.1997); *Borgeson v. Archer–Daniels Midland Co.*, 909 F.Supp. 709, 716 (C.D.Cal.1995); *Haisch v. Allstate Ins. Co.*, 942 F.Supp. 1245, 1248 (D.Ariz.1996).[6]

The principal criticism directed at the *Abbott* decision is that the Fifth Circuit made an erroneous determination that (a) the statute was clear and unambiguous on its face and (b) it was therefore unnecessary to refer to the legislative history. For example, in

---

to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution ...

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28  U.S.C. § 1367(a) and (b).

**5.** In *Kasky v. Perrier Group of America, Inc.*, 1991 WL 577038, 1991 U.S. Dist. LEXIS 2177 (S.D.Cal.1991), Judge Rhoades remanded a Cal. Bus. & Prof.Code § 17200 class action to state court. In setting forth the applicable diversity class action standard, Judge Rhoades cited to *Zahn.* However, Judge Rhoades did not explicitly address the impact of the Judicial Improvement Act.

**6.** In addition to these cases from district courts within the Ninth Circuit, plaintiffs also cite to decisions from a number of other district courts outside the Ninth Circuit which affirm the vitality of *Zahn* in the aftermath of § 1367's revisions. *See* Plaintiffs' Brief, pp. 6–7. The Court also notes that Judge Moskowitz distinguished defendants' authority and applied *Zahn* in *Celebrities Restaurant v. Kimberly–Clark Corp.*, 97–1633–BTM (POR) (S.D.Cal. Nov. 17, 1997).

*Borgeson v. Archer–Daniels Midland Co.,* 909 F.Supp. 709, 716 (C.D.Cal.1995), the Court highlighted the ambiguity of the statute by providing an alternative to the analysis set forth in *Abbott.* The Court stated:

> [I]t is evident that the plain language of subsection (a) is entirely consistent with *Zahn.* Through the incorporation of the language "or as expressly provided otherwise by federal statute," Congress specifically included as an exception to § 1367(a) any other federal statute including 1332 (and its most relevant judicial interpretations *Zahn* and [*Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)]).

*Borgeson,* 909 F.Supp. at 716. Other courts have found the Fifth Circuit's rejection of the legislative history disconcerting in light of the "the longstanding precedent against the aggregation of separate and distinct claims" and the fact that the legislative history indicates that Congress did not intend to overrule *Zahn. Snider,* 914 F.Supp. at 391. In *Borgeson,* the Court highlighted the House Report's statements that supplemental jurisdiction "is not intended to effect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989)." *Borgeson,* 909 F.Supp. at 715 (citing H.R.Rep. No. 734, 101st Cong., 2d Sess. 29 (1990), reprinted in USCCAN 6860, 6875). As the *Borgeson* Court points out, in describing pre-*Finley* law, the House Report cites directly to *Zahn.* Therefore, these courts all find that *Zahn* survives the 1990 revisions to § 1367.

█ The Court agrees with plaintiffs' argument and joins the chorus of courts which have reaffirmed the vitality of *Zahn.* Although the Fifth and Seventh Circuits have determined that § 1367 effectively overrules *Zahn,* this Court is not so persuaded. First, the Court finds that the statute is not clear and unambiguous on its face and, therefore, a review of the legislative history is appropriate. Moreover, this history supports a construction of § 1367 which is consistent with the survival of *Zahn.* In addition, the Court is mindful of the Ninth Circuit precedent which safeguards the non-aggregation doctrine in diversity class actions. For example, in *Goldberg v. CPC International, Inc.,* 678 F.2d 1365 (9th Cir.1982), the Ninth Circuit rejected the attempts of removing defendants to aggregate the class plaintiffs' claims for attorney's fees. The Court explained that "plaintiffs whose claims fall short [of the amount in controversy minimum] cannot satisfy the requirement by aggregation of claims. [Defendants'] theories would seriously undermine and are contrary to the rule expressed by the Supreme Court in *Zahn.*" *Id.* 678 F.2d at 1366.

A disavowal of *Zahn* would have profound implications for district courts. It would allow individuals with claims which do not independently satisfy the amount in controversy requirement to bootstrap those insufficient claims into federal court by joining their claims to a class action where at least one member of the plaintiff class meets the amount in controversy requirement. Even the *Stromberg* Court recognized this danger—"it is hard to avoid remarking that allowing thousands of small claims into federal court via the class device is a substantially greater expansion of jurisdiction than is allowing a single pendent party." *Stromberg,* 77 F.3d at 931. The Court is unwilling to countenance such a departure from prior Supreme Court and Ninth Circuit precedent where (a) the Ninth Circuit has yet to address the issue and (b) the legislative history to § 1367 indicates that the measures were intended to be a "noncontroversial" collection of "relatively modest proposals." *Abbott,* 51 F.3d at 528 (citing 1990 USCCAN at 6860–61). Accordingly, the Court finds that *Zahn* controls the instant case and, therefore, defendants must establish that each class members' claim meets the jurisdictional amount in controversy requirement.

## 2. Do Defendants Satisfy the $75,000 Requirement for Each Member?

Having determined that defendants must establish that each class member's claim exceeds the amount in controversy minimum, the Court now turns to an examination of whether defendants meet that burden by a

preponderance of the evidence. *Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 862 (9th Cir.1996). In opposition to the motion to remand, defendants argue that all of the putative class members' claims satisfy the amount in controversy requirement because plaintiffs' complaint sets forth serious allegations of misconduct,[7] which if proven, would entitle plaintiffs to substantial relief. Defendants argue that the absence of a request for a particular amount for these claims in the prayer for relief is of no significance because under Fed.R.Civ.P. Rule 54(c), "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." With respect to plaintiffs' restitution claims, defendants argue that, based on the figures included in plaintiffs' complaint, restitution for the cost of cigarettes alone for a lifetime smoker would reach $80,000 and exceed the jurisdictional minimum. Opposition, pp. 9–10.[8] Moreover, defendants contend that the restitution claim would presumably seek reimbursement for the costs of anti-smoking devices, doctors visits and medical bills which are associated with the addiction. Defendants also argue that any restitution award would incorporate future costs for those class members who are still addicted. *Ammex Warehouse Co. of San Ysidro, Inc. v. Dept. of Alcoholic Beverage Control*, 224 F.Supp. 546, 551 (S.D.Cal.1963), *aff'd*, 378 U.S. 124, 84 S.Ct. 1657, 12 L.Ed.2d 743 (1964) (recognizing that a finding of amount in controversy can be based on future damages). Defendants also raise the specter of a punitive damages claim based on the allegations of the complaint. Taken together, defendants contend that these factors demonstrate it is more likely than not that plaintiffs claims exceed $75,000.[9]

█ The Court is unconvinced by defendants' assertions. First, the Court notes that, in the complaint, plaintiffs seek "restitution of the costs to class members to purchase the cigarettes needed to maintain their smoking addiction created by Defendants' false and deceptive advertising ..." Complaint, ¶ 24. Therefore, as plaintiffs point out, certain class members may have only become addicted for a few years and then managed to quit. Clearly, the claims of these class members for restitution of the costs of cigarettes would not even approach $75,000.[10] The existence of such class mem-

---

**7.** Defendants refer to the following allegations from plaintiffs' complaint to illustrate their point: (a) defendants marketing strategy involved promoting cigarettes to the general public and children without warning of the addictive nature of nicotine; (b) the strategy has resulted in nicotine addictions which cost addicts "thousands of dollars annually;" (c) cigarettes cause death and disease to millions of people; (d) collectively the addictions costs addicts "hundreds of millions of dollars each year to support their drug habit;" and, (e) 434,000 people a year die as a result of cigarette smoking. Opposition, pp. 7–8.

**8.** In their opposition, defendants take issue with plaintiffs' allegation that a pack-a-day smoker who starts smoking as a teenager will spend $54,000 on cigarettes. Defendants counter that a smoker who spends only $2000 a year on cigarettes over a 40–year lifetime of smoking will spend $80,000 on cigarettes. Defendants derive the $2000 figure from plaintiffs' allegation that, over a four-year period, class members spend between $7000–10,000 on cigarettes. Complaint, ¶ 24.

**9.** Defendants also argue that plaintiffs could have avoided removal in the first instance by filing a stipulation that they are not seeking more than $75,000 in damages. Although such a stipulation may have prevented removal, it does not advance defendants' demonstration that plaintiffs' claims exceed $75,000.

**10.** At oral argument, defendants emphasized the importance of prospective damages in evaluating whether plaintiffs' claims satisfied the amount in controversy requirement. Defendants argued that the Court must consider future damages in the form of future cigarette expenditures in evaluating the $75,000 requirement. However, even if the Court considers those expenses as they relate to the instant case, they fail to establish that each plaintiff's claim meets the jurisdictional threshold. Even if putative plaintiffs began smoking four years ago (spending $2000 a year on cigarettes per defendants' calculus) and continued to smoke until a trial 5 years from now, they would only be entitled to an $18,000 award of restitution. If the class members still smoked after trial, then they could bring an action in the future for their subsequent expenditures. As plaintiffs properly point out, restitution is designed to punish a defendant for past conduct and, therefore, is not designed as a prospective remedy. *See People v. Toomey*, 157 Cal.App.3d 1, 26, 203 Cal.Rptr. 642 (1984)(indicating that restitution under § 17203 is "designed to penalize a defendant for *past* unlawful conduct and thereby deter future violations") (emphasis added); *Cortez v. Purolator Air Filtration*, 64 Cal.App.4th 882,

bers is fatal to defendants' effort to defeat removal. Second, defendants' concern about a punitive damage claim is unwarranted on the face of plaintiffs' complaint. Aside from the fact that plaintiff fails to assert any claim for damages, much less punitive damages, it does not appear that a punitive damage claim is permissible under Cal. Bus. & Prof § 17200. *See Day v. AT & T,* 63 Cal.App.4th 325, 339, 74 Cal.Rptr.2d 55 (1998) (stating that § 17203 is not "intended as a punitive provision"). In fact, plaintiffs concede as much in their reply brief. Third, defendants are precluded from aggregating plaintiffs' request for attorney's fees in an effort to satisfy the amount in controversy requirement. *See Goldberg v. CPC International, Inc.,* 678 F.2d 1365 (9th Cir.1982). Fourth, the Court notes that defendants fail to come forward with evidence to support its amount in controversy analysis; instead, defendants simply speculate on the potential breakdown for restitution costs. However, as the Ninth Circuit stated in *Gaus,* "defendant[s] bear[ ] the burden of actually proving facts to support jurisdiction, including the jurisdictional amount." *Gaus,* 980 F.2d at 567. Therefore, the Court finds that defendants have failed to establish, by a preponderance of the evidence, that each plaintiff's claim satisfies the $75,000 requirement. Accordingly, plaintiffs' motion for remand is **GRANTED.**

## CONCLUSION

Based on the preceding discussion, the Court **GRANTS** plaintiff's motion for remand. Accordingly, the case is hereby **REMANDED** to Superior Court for further proceedings.

**IT IS SO ORDERED.**

75 Cal.Rptr.2d 551 (June 10, 1998), *modified,* 1998 WL 372898 (July 7, 1998) ("Restitution is generally defined as an equitable remedy designed to cure unjust enrichment of the defendant absent considerations of the plaintiff's losses"). Accordingly, the Court is unconvinced by defendants' prospective damages argument.