Thearo **SNIDER** and Phillip Steele, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**STIMSON LUMBER COMPANY,** an Oregon business entity, et al., Defendants.

Civ. No. S–95–1453 LKK/JFM.

United States District Court, E.D. California.

Jan. 22, 1996.

Morton Friedman, Friedman, Collard, Cutter & Panneton, Sacramento, CA, for plaintiffs.

Steven H. Gurnee, Law Offices of Steven Gurnee & Associates, Sacramento, CA, for defendants.

Douglas R. Alliston, Farmer & Murphy, Rancho Cordova, CA, for intervenors California Insurance Company.

## ORDER

KARLTON, Chief Judge Emeritus.

This case comes before the court on defendants' motion to dismiss and on the California Insurance Company's motion to intervene. The motions raise a variety of issues. The court will dispose of one issue herein and the balance in a companion unpublished opinion. *See Kouba v. Allstate Ins. Co.* 523 F.Supp. 148, 151 n. 2 (E.D.Cal.1981), *rev'd on other grounds,* 691 F.2d 873 (9th Cir.1982).

## I.

### The Pleadings

On August 10, 1995, plaintiffs Thearo Snider and Phillip Steele filed this action on behalf of themselves and all others similarly situated. The named defendants are Stimson Lumber Company and Stimson Trading Company, a fictitious business name of Stimson Lumber.

The complaint alleges that defendants manufactured and sold defective hardboard siding. Plaintiffs claim that they purchased the defective siding from defendants, or their agents, and installed it on their dwellings. According to plaintiffs, the siding warped, buckled, cracked, and slipped as a result of weather, exposure and other factors. They allege injury in excess of $50,000.

The complaint contains counts in strict liability, negligence, negligent infliction of emotional distress, and violation of RICO. Plaintiffs also seek to represent a class of over a thousand people who have allegedly installed defendants' siding.

Defendants' motion seeks, *inter alia,* to dismiss the class claims because of a failure to allege that each member of the class has sustained damages in excess of the jurisdiction amount.

## II.

### Aggregation of Class Claims

Defendants contend that plaintiffs fail to satisfy the amount in controversy requirement for a class action because they do not allege that each member's claim exceeds the jurisdictional minimum. The Supreme Court has previously held that in a diversity based class action, where the class members assert separate and distinct claims, each class member must independently meet the amount-in-controversy requirement to establish diversity jurisdiction over his or her claim. *Zahn v. International Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973); *Snyder v. Harris,* 394 U.S. 332, 338, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969). On the other hand, where the plaintiffs have joined together to "enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." *Troy Bank v. G.A. Whitehead & Co.,* 222 U.S. 39, 40–41, 32 S.Ct. 9, 9–10, 56 L.Ed. 81 (1911), *cited in Zahn,* 414 U.S. at 294, 94 S.Ct. at 508.

Plaintiffs do not attempt to argue that all class members have a common and undivided interest such that they can evade the non-aggregation rule of *Zahn.* Rather, plaintiffs contend that in 28 U.S.C. § 1367 Congress overruled *Zahn.*

28 U.S.C. § 1367 contains two subsections which raise the question of whether *Zahn* is still good law. First, subsection 1367(a) provides district courts with supplemental jurisdiction over related claims. Second, subsection 1367(b) carves out exceptions to this grant of jurisdiction for diversity cases. Class actions are not among the exceptions listed in § 1367(b).[1] Thus, the court is presented with a question of statutory construction as to whether the absence of class actions in the list of exceptions constitutes an overruling of the non-aggregation doctrine.

■ As with any issue of statutory interpretation, the first question which a district court must address is whether there is a binding construction of the statute. *See Tello v. McMahon*, 677 F.Supp. 1436, 1441 (E.D.Cal.1988). Neither the Supreme Court nor the Ninth Circuit has determined whether supplemental jurisdiction under § 1367 extends to claims of class members in diversity who do not meet the amount in controversy jurisdictional requirement. Accordingly, the court must undertake its own explication employing the traditional methods of statutory construction. *Id.* at 1441.

■ Analysis of § 1367 commences with application of the plain meaning rule. *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992). Under the rule, the inquiry ends with the words of § 1367 if they are clear and unambiguous. *Id.* If the language of the statute is ambiguous, however, the court may resort to textual and extrinsic aids to construction. *See Dodd v. John Hancock Mut. Life Ins. Co.*, 688 F.Supp. 564, 569 (E.D.Cal.1988).

■ Recently, the Fifth Circuit has held that the plain language of § 1367—i.e. the absence of an exception for class actions in subsection (b)—clearly and unambiguously vested federal courts with the power to hear supplemental claims in class actions based in diversity without regard to the amount in controversy of each individual claim. *In re Abbott Laboratories*, 51 F.3d 524, 527–28 (5th Cir.1995).[2] As that court conceded, its conclusion is inconsistent with that of a number of district courts that have examined the issue. *Id.* at 528 n. 8 (citing twelve district court decisions holding that § 1367 did not overrule *Zahn*, and three non-class action cases holding that § 1367 supersedes *Zahn* ). With due respect to the Fifth Circuit, this court cannot agree with it, since I do not find the language of § 1367 clear and unambiguous.

Under § 1367(a) supplemental jurisdiction depends upon all claims forming part of the same case or controversy. It does not follow, however, as the Fifth Circuit assumes, that the claims of class members asserting a similar wrong but distinct injury and damages form part of the same case or controversy. Indeed, class action doctrine teaches otherwise.

Class actions are a procedural device permitting a single suit where there are common questions, and thereby sometimes providing

---

1. 28 U.S.C. § 1367 provides:
    (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
    (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

2. The Fifth Circuit is the only appellate court to have directly confronted the issue at bar. In a recent case in which no individual plaintiff alleged damages in excess of the jurisdictional minimum, the Third Circuit declined to address whether § 1367 overrides *Zahn* where a named plaintiff claims the jurisdictional amount. *See Spellman v. Meridian Bank*, 1995 WL 764548, *25 n. 22, —— F.3d ——, —— (3rd Cir.1995).

for vindication of rights when economic reality would not otherwise permit suit. *See* 7 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1751, at 509, § 1754, at 543 (1972). Nonetheless, a class action involving separate and distinct claims by definition involves "several or distinct rights." 7 *Id.* § 1756, at 554. Class members can litigate these claims together, not because they are one "case or controversy," but "simply because the different claims [involve] common questions of law or fact." *Snyder v. Harris,* 394 U.S. at 335, 89 S.Ct. at 1056. Accordingly, when class members assert separate and distinct claims, there are as many "cases or controversies" in a class action as there are class members. Simply put, claims related to those asserted by other class members may suffice to support recognition of a class, but that does not mean they "form part of the same case or controversy under Article III of the United States Constitution" within the meaning of 28 U.S.C. § 1367.

The reading of the supplemental jurisdiction statute in light of class action doctrine reflects the distinction *Snyder* and *Zahn* recognized between class actions involving the enforcement of a single title or right, and those where all plaintiffs assert separate and distinct claims. The former permits aggregation, while the latter requires each class member to allege the jurisdictional amount of damages. *See Snyder,* 394 U.S. at 334–35, 89 S.Ct. at 1055–56 and *Zahn,* 414 U.S. at 293–94, 94 S.Ct. at 508–09. While the non-aggregation doctrine for separate and distinct claims is based upon the Supreme Court's interpretation of the statutory phrase "matter in controversy," *Snyder,* 394 U.S. at 336, 89 S.Ct. at 1056, the logical inference is that a class action asserting a common and undivided interest involves a single "case or controversy," but that a class action containing separate and distinct claims comprises a different "case or controversy" for each class member's claim. Read in this light, the text of § 1367 does not clearly and unambiguously create supplemental jurisdiction over separate and distinct claims in a class action

based in diversity. Indeed, given the assumption that Congress knows the law, *Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979), it appears to this court that a reading of the statute in light of the law in existence during the passage of § 1367 is a more natural and appropriate one.

Even if § 1367 is susceptible to the Fifth Circuit's reading, the fact that it is not unreasonable to interpret the statute consistent with the non-aggregation rule demonstrates that the text is not conclusive. Since ambiguity exists, resort may be had to the legislative history to resolve the question of construction. *See Catholic Social Services Inc. v. Meese,* 685 F.Supp. 1149, 1152 (E.D.Cal. 1988); *see also Leroy Cattle Co., Inc. v. Fina Oil & Chemical Co.,* 1994 WL 151105, at *15 n. 10 (D.Kan.1994), ("It is unlikely that so much scholarly effort would have been expended on the meaning and purpose of § 1367 if its meaning and purpose were clear.").

As the Fifth Circuit itself acknowledged, the legislative history of § 1367 strongly indicates that Congress did not intend to overrule *Zahn.* *Abbott Laboratories,* 51 F.3d at 527–28. The history demonstrates that Congress passed § 1367 essentially to "restore the pre-*Finley* understandings of the authorization for and limits on other forms of supplemental jurisdiction." H.R.Rep. No. 734, 101st Cong., 2d Sess. 28 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6802, 6860, 6874.[3] Indeed, the legislative history explains that "[t]he section is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to *Finley,*" 1990 U.S.C.C.A.N. at 6875, and cites, *inter alia,* to *Zahn* as a pre-*Finley* case untouched by the Act. *Id.* at 6875 n. 17. In the words of the Fifth Circuit, "[t]he House Committee on the Judiciary considered the bill that became § 1367 to be a 'noncontroversial' collection of 'relatively modest proposals,' not the sort of legislative action that would upset any long-established precedent

---

**3.** *Finley v. United States,* 490 U.S. 545, 556, 109 S.Ct. 2003, 2010, 104 L.Ed.2d 593 (1989), held that federal courts could not exercise pendent-

party jurisdiction without an express legislative grant.

392

like *Zahn.*" *Abbott Laboratories,* 51 F.3d at 528, quoting 1990 U.S.C.C.A.N. at 6861.

Given the ambiguity of the statute and the longstanding precedent against the aggregation of separate and distinct claims, resort to the legislative history is appropriate. That history demonstrates that Congress did not intend § 1367 to overrule *Zahn.* Accordingly, this court, joining the vast majority of district courts around the country, concludes that where plaintiffs base jurisdiction of a class action upon diversity and allege separate and distinct claims, they must allege that each class member has a $50,000 claim to maintain the case.

As noted above, plaintiffs appear to concede that they are alleging separate and distinct claims, but have failed to allege that each member of the class has suffered more than $50,000.00 in damages. Nonetheless, given the allegations concerning the named plaintiffs, there is no reason to suppose that they cannot allege that the class members have suffered damages in excess of $50,000. Accordingly, plaintiffs are granted leave to amend their complaint if they can truthfully assert that all class members meet the jurisdictional minimum.

IT IS SO ORDERED.